UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLA LYONS,

    Plaintiff,                                    Civil Action No.: 11-11597

vs.                                                 HON. MARK A. GOLDSMITH

AUTOZONERS LLC,

    Defendant.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 12)

### I. INTRODUCTION

    This is a sex discrimination case brought under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 et seq., with jurisdiction premised on diversity of citizenship. This case is brought by Plaintiff Carla Lyons against her former employer, AutoZoners LLC ("AutoZoners"), alleging sexual harassment, sex discrimination, and retaliation. Plaintiff claims that (1) AutoZoners allowed a hostile work environment to exist at her workplace, (2) AutoZoners' employees sexually discriminated against her for not following the company's cash-handling policy, and (3) AutoZoners retaliated against her by terminating her employment after she complained of sexual harassment.

    Now before the Court is AutoZoners' motion for summary judgment (Dkt. 12). The matter is fully briefed and oral argument was heard on October 11, 2012. The Court has thoroughly reviewed the motion papers and the evidence attached thereto. For the reasons that follow, the Court will grant summary judgment in favor of AutoZoners.

## II. BACKGROUND[1]

Plaintiff was employed at AutoZoners from 2003 to 2009. Lyons Deposition, January 18, 2012, 28, 31-32, 66 ("Lyons Dep.") (Dkt. 12-2). At all relevant times to this litigation, Plaintiff worked as a commercial driver at AutoZoners store 2118 in Taylor, Michigan. Id. at 31. Plaintiff's interactions with other employees of AutoZoners provided most of the relevant facts. Other employees included Nathan Moore, who worked as a commercial specialist at store 2118 and supervised Plaintiff. Id. at 43. Plaintiff also had interactions with Darren Williams, a district manager, who oversaw store 2118, and Mark Poindexter, who worked at store 2118 with Plaintiff in 2008. Id. at 74, 77.

On January 27, 2009, AutoZoners – through regional manager Dave Michalak – terminated Plaintiff from her position for her failure to secure AutoZoners' funds. Declaration of Dave Michalak ¶ 6 (Dkt. 12-6). Michalak made this decision after an internal investigation by Landon Brink, a regional loss manager, which concerned the loss of $103 in cash. Id. ¶ 5.

The events leading up to Plaintiff's termination on January 27, 2009 date back to sometime in mid-2008. Plaintiff testified that in 2008, her responsibilities included pulling ordered automobile parts from shelves, delivering parts to customers, and collecting payment at the time of delivery. Lyons Dep. at 45-48, 52. When customers paid in cash, Plaintiff would collect the payment and, upon her return to the store, deposit the cash in a safe deposit box. Id. at 47-48, 52.

Plaintiff also testified that AutoZoners required its employees to read an employee handbook. Id. 37. In addition to anti-discrimination and anti-retaliation policies and procedures, the handbook contained the company's discipline policies and procedures and provided that one

---

[1] Discovery appears to have been relatively limited, as the evidence consists of Plaintiff's deposition and two affidavits from AutoZoners' employees.

ground for termination was improper cash handling. Id. at 41. The handbook further stated that AutoZoners employees are responsible for protecting AutoZoners' assets and funds, and for ensuring their efficient use for legitimate business purposes only. Id. 41-42. Plaintiff testified that the rationale for this policy was that theft, carelessness, waste, and misuse directly affected AutoZoners' profitability. Id. at 42. Plaintiff said that she understood this policy. Id. Plaintiff admitted that she understood that if she were collecting a cash payment, it was important to make sure that the cash was kept in a safe place. Id. at 49-50.

Plaintiff testified that store 2118 had an office without a door where there was a drop box for cash payments secured with a key. Id. at 53-54. Only managers possessed the key to the drop box. Id. Part of Plaintiffs' job as a commercial driver was to pick up checks and cash payments from commercial accounts and place them into the drop box. Id. at 54.

Plaintiff testified that during her employment she had problems at work with Moore, Williams, and Poindexter. Plaintiff testified that she believed that Moore asked her to do things outside of her job description. Id. at 61-63. At some point, Moore asked her to clean the shelves with soap and water and on one occasion he asked her to record the dates and times of her deliveries on a roster. Id. Plaintiff found this request unusual, and on the same day of the request, learned that Moore had not asked the other commercial driver to record the dates and times of deliveries. Id. at 62. Plaintiff confronted Moore about it, returned the roster, and walked away. Id. at 62. Moore never asked her to record the times of her deliveries again. Id. at 63. Plaintiff testified that she believes that Moore asked her to do things outside of her job description to run her out of the store so that he could hire his friends to work in the store. Id. at 63-64.

As for Williams, Plaintiff testified that, sometime during the summer of 2008, Williams told Plaintiff that "[i]f it wasn't for this job, you would be mine." Id. at 87-88. Plaintiff admitted that no one witnessed this alleged statement. Id. at 89. The day Williams made that statement, Plaintiff reported it to Ken Champagne, store 2118's manager. Id. at 87-89. Champagne told her that he did not want to hear about it. Id. at 89-90. Plaintiff also testified that she believed Champagne would take care of this situation. Id. at 91. In the AutoZoners hierarchy, Williams, as district manager, was Champagne's supervisor. Id. at 88.

The third person with whom Plaintiff had difficulty was Mark Poindexter, an employee who worked with Plaintiff for a short time. Id. at 66, 77, 98-99. Around October 2008, Poindexter held a water hose and told Plaintiff that "this is what it's like to be with a black man" and would put his hands on Plaintiff's shoulder or his arm around her waist. Id. at 64, 71. Plaintiff reported Poindexter's conduct to Moore, who apparently addressed her complaint because, as she testified, she never had a problem with Poindexter again. Id. at 64, 98.

On November 4, 2008, Plaintiff spoke with Willie Banks, AutoZoners' human resources manager for the Detroit region who was responsible for enforcing the company's discrimination, retaliation and harassment policies. Id. at 83-84. Plaintiff admitted that she understood that Banks was responsible for investigating complaints of discrimination and harassment. Id. at 38-39, 83-84. Plaintiff further admitted that she felt like she could contact Banks if she had a problem. Id. at 45. Plaintiff testified that she never called Banks to report any of the above-alleged incidents, but spoke with him on November 4, 2008, when he visited store 2118. Id. at 83. At that meeting, she wrote a statement. Id. at 85.

In her statement, Plaintiff reported Williams' comment ("If it wasn't for this job, you would be mine.") from the summer of 2008. Id. at 91-92. Plaintiff admitted that she informed

4

Banks that this was the only alleged comment she found to be offensive. Id. at 94-95. She admitted that she wrote "no" in response to a question asking whether Williams made any other comments to her. Id. at 91. Plaintiff testified that Williams' comment that she reported in her written statement was the only sexual harassment she had been subjected to during that time. Id. at 94-95. Plaintiff testified that Williams refrained from doing or saying anything to her of a sexual nature after November 4, 2008. Id. at 96-97. Plaintiff further testified that she had another encounter with Williams some time later, who said to her "You're always running from me." Id. at 95, 97. At the time, Plaintiff did not consider this to be sexual harassment, but then later changed her mind when she began to see "the entire environment." Id. at 95.

Plaintiff also stated that she did not inform Banks of any alleged sexual harassment by Poindexter. Id. at 97-98. Plaintiff did not report Poindexter's conduct to Banks because she believed Moore had taken care of it already. Id. at 97-98

After Plaintiff's meeting with Banks, Plaintiff testified that, on December 4, 2008, she picked up a cash payment of $103 from a customer. Id. at 57, 112. Plaintiff testified that she returned to the store with the cash payment, but did not place it in the drop box because Moore told her to leave the money on the counter in the office. Id. at 57-58. Plaintiff testified that she was the only one in the office when she placed the money on the counter. Id. at 110.

Plaintiff testified that a week or two afterwards, Moore asked her if she knew what happened with the money because it was missing. Id. at 110-111. On December 16, 2008, Plaintiff met with Landon Brink, the loss prevention manager, to discuss the missing $103. Id. at 50, 113. Brink told Plaintiff that the money was missing and asked her what happened to it. Id. at 114, 116. Plaintiff told him that she had left the money on the counter because Moore told her to do so. Id. at 58, 114, 116. Plaintiff stated that she knew that she was responsible for the

5

security of the $103. Id. at 60. Brink asked her to provide a written statement about what happened on December 4, 2008, but she refused. Id. at 115. Plaintiff testified that she did not give a statement because she believed Moore "was trying to set me up to fire me." Id. at 115. Plaintiff and Brinks also watched a security video, which showed Plaintiff placing the money on the counter. Id. at 116-117. Plaintiff testified that this was proof that she did not take the money. Id. at 116.

On January 27, 2009, AutoZoners terminated Plaintiff for the failure to properly secure AutoZoners' funds. Id. at 118-119. Dave Michalak, the regional manager, made the decision to terminate Plaintiff after he had reviewed the investigation conducted by Brink regarding the loss of $103. Def.'s Mot. for Summ. J. Ex. C (Dkt. 12-6). Based on his review of Brink's investigation, Michalak stated that his decision to terminate Plaintiff's employment was for her failure to properly secure AutoZoners' funds, and not for any other reason and without the input of Nathan Moore or Darrin Williams. Id. Michalak also stated that he did not know whether any AutoZoners employee had not been discharged for failing to secure the company's funds. Id. Plaintiff testified that she was told that she was being discharged for that reason. Id. at 118. Plaintiff testified that she believed that it was Moore's influence over Michalak that lead to her discharge. Id. at 107. Plaintiff said that she believed Moore set her up to get her discharged because he wanted to hire his friends to work at the store. Id. at 117.

### III. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To withstand summary judgment, the nonmoving party must present sufficient evidence to create a genuine issue of material fact. Humenny v. Genex Corp., 390 F.3d 901, 904

6

(6th Cir. 2004). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the nonmovant. Id. "'After adequate time for discovery and upon motion, summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party bears the burden of proof at trial.'" Kalich v. AT&T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

When considering a motion for summary judgment, a district court may consider some forms of hearsay evidence, but such evidence must still be admissible at trial. Worthy v. Mich. Bell Tel. Co., 472 F. App'x 342, 343-344 (6th Cir. 2012). An affidavit used to support or oppose a motion for summary judgment is required to be sworn to by the affiant in front of an officer authorized to administer oaths and must be made on the affiant's personal knowledge. Id. (internal citations omitted). Alternatively, under 28 U.S.C. § 1746, declarations may take the place of affidavits, so long as those declarations are made under penalty of perjury, certified as true and correct, dated, and signed. Id. (citing Pollock v. Pollock, 154 F.3d 601, 612 n.20 (6th Cir. 1998)). Statements that are not sworn in one of these two ways are not competent summary judgment evidence. Id. at 344.

## IV. ANALYSIS

ELCRA provides that employers shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex." Mich. Comp. Laws § 37.2202(a). This statutory mandate provides the basis for various claims, including the three claims in Plaintiff's complaint: sexual harassment, sex discrimination, and retaliation. See, e.g., Radtke v. Everett, 501 N.W.2d 155 (Mich. 1993) (addressing sexual harassment and sex

7

discrimination claims); Barrett v. Kirtland Cmty. Coll., 628 N.W.2d 63 (Mich. Ct. App. 2001) (discussing retaliation in the context of sex discrimination). For the reasons that follow, taking the facts in the light most favorable to Plaintiff, Plaintiff has not demonstrated a fact issue for trial for her three claims.

    A. <u>Sexual Harassment through Hostile Work Environment</u>

Under ELCRA, prohibited discrimination can occur through sexual harassment, which is defined as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." Mich. Comp. Laws § 37.2103(i). If sexual harassment occurs with "the purpose or effect of substantially interfering with an individual's employment" or creates "an intimidating, hostile, or offensive" employment environment, then that form of harassment is a "hostile work environment." Chambers v. Trettco, 614 N.W. 2d 910, 915 (Mich. 2000). Courts have explained that the "essence of a hostile work environment action is that one or more supervisors or coworkers create an atmosphere so infused with hostility toward members of one sex that they alter the conditions of employment for them." Radtke, 501 N.W. 2d at 163. To establish a claim for a hostile work environment, a plaintiff-employee must establish five elements by the preponderance of the evidence:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of sex; (3) the employee was subjected to unwelcome sexual conduct or communication; (4) the unwelcome sexual conduct was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) <u>respondeat superior</u>.

Chambers, 614 N.W. 2d at 915.

In assessing these elements, courts look to "the totality of the circumstances to see whether a reasonable person would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an

intimidating, hostile, or offensive work environment." Kalich, 679 F.3d at 473. Relevant factors in assessing the existence of a hostile work environment are (1) the frequency of the discriminatory conduct, (2) the conduct's severity, (3) whether the conduct was physically threatening or humiliating or merely an offensive utterance, and (4) whether the conduct unreasonably interfered with the employee's work performance. Id. at 473-474 (citing Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993)).

Courts have held that far more serious conduct than that alleged here failed to establish a hostile work environment. For example, in Myers v. Todd's Hydroseeding & Landscape, L.L.C., 368 F. Supp. 2d 808, 810-811 (E.D. Mich. 2005), (1) the manager referred, in the plaintiff's presence, to "big boobs," "panty lines," and "G-strings," and the size of genitals as part of sexual statements or jokes; (2) a male employee touched the plaintiff's shoulders; (3) the manager told plaintiff that she had "aged well," was "very pretty," and had "a nice figure;" (4) the manager directed the plaintiff to call him from her home; (5) the manager massaged the shoulders of another female employee in the plaintiff's sight; and (6) the manager asked another female employee to come to his house when his girlfriend was away. The district court held that this conduct did not create a hostile work environment. Id. See also Hensman v. City of Riverview, No. 06-CV-14756, 2008 WL 821940 (E.D. Mich. Mar. 26, 2008) (holding that a hostile work environment did not exist where manager of employee (1) called female employee by the wrong name; (2) kept the door closed when he met with her in his office; (3) walked too closely behind her; (4) would sniff and ask what fragrance she was wearing; (5) commented about noticing her blue eyes; (6) told her she looked "cute in her jammies" when, after locking himself out of the office after an evening meeting, came to her house at night to get her key, and brought her flowers and bagels the next day to apologize for waking her up; (8) twice told her

9

she was strong, aggressive, and "voluptuous" like his wife and mother-in-law; (9) made a gesture of large breasts when he said the word "voluptuous"; (10) hugged her on three occasions; and (11) grabbed her by the arm when she was storming out of work on her last day on the job).

Other cases illustrate that sporadic offensive language and isolated instances of touching also do not create a hostile work environment. See, e.g., Langlois v. McDonald's Rests., 385 N.W.2d 778 (Mich. Ct. App. 1986) (finding no hostile work environment where manager asked an employee if "she would like to have some fun" and touched her breast and grabbed one of her buttocks); Shaull v. Mich. Affiliated Health Care Sys., No. 202582, 1998 WL 1989810 (Mich. Ct. App. Sept. 22, 1998) (holding that that hugging plaintiff from behind, kissing the back of plaintiff's head and calling her "hon," telling the plaintiff to cross her legs "like a man" while wearing a skirt, and asking personal questions about plaintiff's sexual relationship with her husband, was not severe or pervasive enough conduct to constitute sexual harassment based on a hostile work environment).

Also, in two Title VII cases,[2] courts held that sporadic vulgar comments combined with infrequent sexual advances or touching failed to create a hostile work environment. In the first case, Morris v. Oldham County Fiscal Court, 201 F.3d 784 (6th Cir. 2000), the Sixth Circuit held that a hostile work environment did not exist where a supervisor told dirty jokes in the plaintiff's presence, made an alleged sexual advance toward the plaintiff, called the plaintiff "hot lips" on a single occasion, and made several comments about the plaintiff's dress. Id. at 790. The conduct at issue in the other case, Burnett v. Tyco Inc., 203 F.3d 980 (6th Cir. 2000), was more egregious, but the court did not find a hostile work environment and affirmed the district court's grant of summary judgment to the employer. There, the plaintiff's personnel manager placed a

---

[2] Title VII and ELCRA use the same evidentiary framework. Humenny v. Genex Corp., 390 F.3d 901, 906 (6th Cir. 2004).

pack of cigarettes under the strap of plaintiff's tank top, told her that she had "lost her cherry," and said "dick the malls" to her in response to a sweatshirt she was wearing. Id. at 981. The Sixth Circuit held that "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment." Id. at 985.

Regarding the parties' positions on the hostile work environment claim, there is a dispute regarding the fourth element[3] – whether the conduct substantially interfered with Plaintiff's employment or created a hostile work environment. AutoZoners points out that that the relevant conduct – the touching and comments by Poindexter and the comments by Williams – was isolated and a reasonable person would not find it severe or pervasive. Def's Mot. for Summ. J. at 12 (Dkt. 12). Plaintiff asserts that "Williams had a long history of making sexual comments, and creating a hostile and intimidating work environment." Pl.'s Resp. at 15 (Dkt. 23). Plaintiff reiterates the allegation in her complaint that Williams' conduct made her uncomfortable. Id. at 12. Plaintiff also asserts that Williams "kept all the women in the facility uncomfortable because of his unwanted advances." Id. at 14. To support her claim, Plaintiff has attached statements made by AutoZoners' employees in HR forms to her response. See Pl.'s Resp. Ex. 2-6.[4]

---

[3] There is no dispute that Plaintiff has established the first three elements: (1) Plaintiff belonged to a protected group - women; (2) Plaintiff was subjected to communication or conduct on the basis of sex by Poindexter and Williams; and (3) Plaintiff found Poindexter's and Williams' conduct unwelcome. Chambers, 614 N.W. 2d at 915. Because Plaintiff cannot establish the fourth element, the Court does not reach the disputed fifth and last element. Id.

[4] For example, one of Plaintiff's colleagues, Tina Godek, wrote that Plaintiff "was uncomfortable and felt disrespected by Mr. Williams' action." Pl.'s Resp. Ex. 2 (Dkt. 23-3). However, as discussed below, this evidence is not a sworn statement and is therefore incompetent. Worthy, 472 F. App'x at 343-344.

Viewing the facts in light most favorable to Plaintiff, the Court holds that Plaintiff has not established a prima facie hostile work environment claim. Here, Plaintiff has not presented any competent evidence to establish the existence of a hostile work environment. Plaintiff's efforts to use unsworn HR statements that Williams's conduct made female employees, including Plaintiff, at AutoZoners store 2118 uncomfortable falls short. The Court cannot accept this evidence under the summary judgment standard, see e.g., Worthy, 472 F. App'x at 344 ("Because these letters are unsworn, they are not competent summary judgment evidence, and the district court properly refused to consider them in ruling on Michigan Bell's motion for summary judgment."), and even if the Court did, the statements fail to establish that Williams' conduct interfered at all with Plaintiff's employment, a necessary component of her claim.

Rather, the only competent evidence for the Court to evaluate is Plaintiff's own testimony reflecting three comments and at least two instances of touching, which occurred over several months between the summer of 2008 and November 2008. Examining this conduct under the Harris factors for frequency, severity, a humiliating or minatory nature, and interference, the Court finds all the factors weigh in favor of AutoZoners. The conduct was not frequent. 679 F.3d at 473-474. Nor would a reasonable person find the conduct severe, though the comments and touching were unwelcome. Id. The most vulgar comment, Poindexter's comment about the hose, was singular and did not have the same pejorative force as the comments in Myers, Morris, or Hensman, where courts held that no hostile work environment existed. Williams' two comments, separated by approximately six months, were not severe, though they demonstrate attentions directed toward Plaintiff.[5] The conduct also did not physically threaten or humiliate

---

[5] Williams' second comment, "Why are you always running from me?" may not even have been made on the basis of sex, as Plaintiff indicated that she tried to avoid Williams. Lyons Dep. at 97. Comments without a "sexual nature" do not establish a hostile work environment. Corley v.

Plaintiff, but merely offended her. Id. Lastly, Plaintiff has not presented by preponderance of the evidence that the comments and instances of touching caused substantial interference. Id. Accordingly, summary judgment on Plaintiff's hostile work environment claim must be granted in favor of AutoZoners.

B. Sex Discrimination

Sex discrimination in employment, Plaintiff's second claim, is also prohibited by ELCRA. Mich. Comp. Laws. § 37.2202(1)(a). Discrimination can be proven with direct or circumstantial evidence. Town v. Mich. Bell Tel. Co., 568 N.W. 2d 64, 67-68 (Mich. 1997). If there is no direct evidence of discrimination, the Court must analyze plaintiff's claim by shifting the burden of circumstantial evidence between the parties, as the Michigan Supreme Court adopted the framework established in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Id. Under this framework, if a plaintiff alleges sex discrimination, she must first establish four elements: (1) she was in a protected group; (2) she was qualified for the position or entitled to the benefit sought; (3) she was subjected to an adverse employment action; and (4) she was treated differently from similarly situated males. Vredevelt v. GEO Group, Inc., 145 F. App'x 122, 127 (6th Cir. 2005). For the last element, a similarly situated individual with whom a plaintiff seeks to compare herself must demonstrate three similarities. The similarly situated individual must have (1) had the same supervisor; (2) been subject to the same employment standards; (3) conducted themselves in the same way, so that they would not be distinguished by it or "their employer's treatment of them for it." Humenny, 390 F.3d at 906.

---

Detroit Bd. of Educ., 681 N.W.2d 342, 345-346 (Mich. 2004). The context of the comment could be viewed as having a latent sexual nature, so the Court assumes that its basis was sex, as it must at the summary judgment stage.

13

If a plaintiff establishes her prima facie case under the McDonnell-Douglas burden-shifting framework, the burden then shifts back to the employer, who must then articulate a nondiscriminatory reason for its action. Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 526 (6th Cir. 2008). The employer "bears only the burden of production; the burden of persuasion remains with the plaintiff at all times." Id. If the employer articulates a nondiscriminatory reason for the employment decision, the burden returns to the plaintiff, who must then prove by a preponderance of the evidence that the employer's articulated reason is a pretext to mask discriminatory intent motivating the adverse employment action. Id.

Turning to the claim at hand, Plaintiff does not have direct evidence of sex discrimination, so she must offer circumstantial evidence of discrimination. Plaintiff easily meets the first three elements of a sex discrimination claim because (1) she was a female and therefore a member of a protected class; (2) it is undisputed that she was qualified for her job; (3) she was terminated. Vredevelt, 145 F. App'x at 127. The dispute between the parties concerns the fourth element – different treatment of a similarly situated male. Id. AutoZoners argues that Plaintiff cannot establish her prima facie case because she has not identified another male employee who was not terminated for the same conduct at issue – not placing the $103 in the deposit box. Def.'s Mot. for Summ. J. at 24. Plaintiff's brief counter-argument – without citation to applicable law – states that Plaintiff "was treated differently than similarly situated males" and that males, such as Williams, "who harassed women" were not treated the same. Pl.'s Resp. at 15.

The record does not indicate that Plaintiff was treated differently from similarly situated males, as Plaintiff does not identify a male, commercial driver who was not terminated for failing to adhere to AutoZoners' cash handling policies. See Humenny, 390 F.3d at 906

(granting summary judgment in favor of defendant-employer because female-plaintiff was not similarly situated from male colleagues who had different employment positions with different job descriptions and never asked for leave to care for their ill parents). The exhibits to Plaintiff's response, even as incompetent evidence, do not shed light on this element, nor does her deposition. Plaintiff's response also identifies Williams as a male employee who was treated differently. But Williams was a regional manager and not a commercial driver, and thus not similarly situated. Humenny, 390. F.3d at 906. Therefore, Plaintiff does not establish her prima facie case for sex discrimination.

Even if Plaintiff could establish her prima facie case, AutoZoners has provided a nondiscriminatory reason for Plaintiff's termination – her failure to adhere to the company's cash-handling policy. AutoZoners' affidavit of Dave Michalak, the regional manager who terminated Plaintiff, attests to this. Michalak's affidavit avers under penalty of perjury that he terminated Plaintiff for the failure to handle the $103 and that he has no knowledge of an AutoZoners' employee not being discharged for failing to secure the company's funds. Def.'s Mot. for Summ. J. Ex. C. (Dkt. 12-6). In the face of the non-discriminatory reason, the burden of production shifts back to Plaintiff who must demonstrate that AutoZoners' reason is pretextual. Mickey, 516 F.3d at 526. Plaintiff asserts that she believes that Michalak made the determination under the influence of Moore, but offers no evidence of this. Lyons Dep. at 107. Consequently, even if Plaintiff could establish her prima facie claim – which she cannot – she fails to establish that her employer's reason for her termination was pretextual. Thus, AutoZoners is granted summary judgment on this claim.

    C. Retaliation

Plaintiff's third claim alleges retaliation. ELCRA prohibits retaliation against a person who has made an ELCRA charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding or hearing under ELCRA. Mich. Comp. Laws § 37.2701(a). As with sex discrimination, a plaintiff can use direct or circumstantial evidence. Bilak-Thompson v. Dollar Tree Stores, Inc., 293 F. App'x 380, 384 (6th Cir. 2008). If circumstantial evidence is used, courts utilize the McDonnell-Douglas burden-shifting framework, where a plaintiff must first establish a prima facie claim. Id. A prima facie claim for retaliation under ELCRA requires four elements: (1) the plaintiff engaged in a protected activity, (2) defendant knew of this protected activity; (3) defendant took an employment action adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the adverse employment action. In re Rodriguez, 487 F.3d 1001, 1011 (6th Cir. 2007). Protected activity includes making a charge, filing a complaint, or participating in an investigation, proceeding, or hearing under the act. Mich. Comp. Laws § 37.2701(a); Barrett, 628 N.W. 2d at 72. For the fourth element, causation, a plaintiff must show that her participation in an activity protected by ELCRA was a significant factor in the employer's adverse employment action and sufficient to raise the inference that her protected activity was the likely reason for the adverse action. Id.

In determining whether a causal connection between protected activity and subsequent adverse action, courts look to the timing of the two events and other evidence such as whether heightened scrutiny of the employee occurred after the protected activity. Mickey, 516 F.3d at 523-525. As for the time between protected activity and adverse action, a court can "infer that an action had a discriminatory or retaliatory basis" if the protected activity and the adverse action occur close in time. Rymal v. Baergen, 686 N.W.2d 241, 303 (Mich. Ct. App. 2004). The Sixth

16

Circuit has stated the following on whether temporal proximity is alone sufficient to establish causation:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

Mickey, 516 F.3d at 525. See West v. Gen. Motors Corp., 665 N.W.2d 468 (Mich. 2003) (stating that, in the context of a whistle-blower claim, a plaintiff "must show something more than merely a coincidence in time between protected activity and adverse employment action"). In other words, the plaintiff has to show that her "employer took adverse employment action because of plaintiff's protected activity." Id. at 472. Courts have also found that a significant amount of time between protected activity and adverse action coupled with an employee's poor performance can prevent a plaintiff from establishing causality. See Cox v. EDS Corp., 751 F Supp. 680, 695 (E.D. Mich. 1990) (lapse of nearly two months between protected activity and adverse action, in addition to fact that the plaintiff's performance problems occurred before and after the complaint was filed, weighs heavily against finding of pretext without any direct evidence of racial discrimination).

      In assessing evidence other than the timing of adverse action for retaliatory conduct, courts examine the sequence of events and whether an employer used heightened scrutiny, such as surveillance video targeting the employee or more manager oversight, to determine whether a genuine issue of material fact affected causation. See MacDonald v. United Parcel Serv., 430 F. App'x 453, 465-466 (6th Cir. 2011) (employer used hidden cameras and other employees ("tails") to observe plaintiff after he had engaged in protected activity); Hamilton v. Gen. Elect. Co., 556 F.3d 428, 435-436 (6th Cir. 2009) (temporal proximity and increased scrutiny by

17

supervisors, such as checking plaintiff's arrival at work and monitoring of plaintiff's performance at work after protected activity, sufficient to establish plaintiff's prima facie case).

Turning to Plaintiff's claim, the parties dispute whether a causal connection exists between Plaintiff's protected activity and termination. AutoZoners argues that the decisionmaker who terminated Plaintiff's employment did not know of Plaintiff's complaints regarding Poindexter and Moore and that approximately three months lapsed between Plaintiff's last complaint and her termination. Def.'s Mot. for Summ. J. at 28-29 (Dkt. 12). Plaintiff counters that Plaintiff "was arbitrarily terminated" because a video shows Plaintiff placing an envelope containing the $103 on the counter, which was done at the direction by Moore. Pl.'s Resp. at 18 (Dkt. 23). Plaintiff contends that this proves she did not take the money, vitiating the stated reason for her termination. Lyons Dep. at 116.

Regarding the temporal aspect of the retaliation claim, Plaintiff has failed to couple temporal proximity with any other evidence of retaliatory conduct to establish causality. Mickey, 516 F.3d at 525. A temporal assessment of the record indicates that Plaintiff's protected activity occurred before her violation of company policy which served as the basis for her termination. Plaintiff made complaints in summer 2008 to store manager Champagne and on November 4, 2008 to Banks, the HR liaison. Lyons Dep. at 72, 88. Plaintiff then left the $103 on the counter instead of the safe deposit box in contravention of AutoZoners' policy on December 4, 2008. Id. at 109-111. Brinks, the loss prevention manager, interviewed Plaintiff on December 16, 2008, and she refused to give him a statement. Id. at 115. Plaintiff was then terminated on January 27, 2009. Declaration of Dave Michalak ¶ 6 (Dkt. 12-6). As the November complaint occurred approximately three months prior to her termination, the timing

18

does not weigh in favor of a finding that Plaintiff's protected activity was a factor for her termination.

Furthermore, Plaintiff has not presented evidence that AutoZoners increased its scrutiny of her at work after her complaints or that the decisionmaker who terminated her employment knew about her protected activity. From the record, heightened scrutiny of Plaintiff did not follow her complaints of reporting Williams' comment ("If it weren't for this job you'd be mine") to Champagne in summer of 2008 and to Banks on November 4, 2008, and Poindexter's conduct in October 2008 to Moore. Plaintiff's complaints actually brought her relief, as she admitted that after talking to Moore she never had problems with Poindexter again. Lyons Dep. at 98. Plaintiff also has not presented evidence that AutoZoners' use of a video camera in the office with the safe deposit box targeted Plaintiff. Even viewed in the light most favorable to Plaintiff, it does not appear from the record that Plaintiff told Brinks that Moore instructed her to put the money on the counter. Notably, the scrutiny of her cash handling occurred after her protected activity, but the record does not indicate whether the video of her placing the $103 on the counter was <u>increased</u> scrutiny targeting Plaintiff or standard practice regarding the AutoZoners' office containing the drop box. <u>MacDonald</u>, 430 F. App'x at 465-466 (noting that employer used hidden cameras for surveillance of employee after protected activity).

Lastly, Plaintiff has not presented any evidence that the decisionmaker who terminated Plaintiff's employment, regional manager Dave Michalak, terminated her in retaliation for her complaints. The unrebutted affidavit of Michalak states that he terminated Plaintiff's employment solely for her mishandling the $103. Def's Mot for Summ. J. Ex. C (Dkt. 12-6). Michalak avers that he did not speak with Moore, Williams, or Banks and based his decision on the loss prevention investigation by Brinks. <u>Id.</u> Plaintiff's admission in her deposition that the

reason AutoZoners gave her for her termination was for failure to secure AutoZoners' funds correlates with the reason in Michalak's declaration for her termination. Lyons Dep. at 118; Ex. C.

Taking into consideration the three month interval between the protected activity and adverse action, no evidence of heightened scrutiny of Plaintiff, and the decisionmaker's statement that he did not terminate Plaintiff for her protected activity, Plaintiff fails to establish a causal connection for her retaliation claim. Thus, summary judgment is granted to AutoZoners on this claim. Because this decision relates to Plaintiff's <u>prima facie</u> retaliation claim, the Court need not address whether genuine issues of material fact existed as to pretext.

## V. CONCLUSION

As Plaintiff cannot establish a single <u>prima facie</u> claim, AutoZoners' motion for summary judgment (Dkt. 12) is granted on all counts.


Dated: November 29, 2012        s/Mark A. Goldsmith
    Flint, Michigan        MARK A. GOLDSMITH
                                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 29, 2012.

                                                s/Deborah J. Goltz
                                                DEBORAH J. GOLTZ
                                                Case Manager